683 So.2d 743 (1996)
Tricia SPERANDEO, Wife of/ and Ronald Sperandeo
v.
DENNY'S, INC., T.W. Services, Corroon & Black Administrative Services, Inc., and ABC Ins. Company.
No. 96-CA-328.
Court of Appeal of Louisiana, Fifth Circuit.
October 1, 1996.
Writ Denied December 13, 1996.
*744 Stephen C. Kogos and Alan P. Dussouy, Metairie, for Plaintiffs-Appellees.
John E. McAuliffe, Jr., New Orleans, for Defendants-Appellants.
Before DUFRESNE, WICKER and CANNELLA, JJ.
DUFRESNE, Judge.
This is an appeal by Denny's, Inc. and T.W. Services, Inc., defendants-appellants, from an adverse judgment in a "slip and fall" case. For the following reasons, we affirm that judgment.
The basic facts of the incident are not seriously disputed. During the evening of August 8, 1991, Tricia Sperandeo and her husband Ronald, plaintiffs, and two friends, Mr. and Mrs. Ludovic Cantin, arrived at a Denny's restaurant to celebrate Ludovic's birthday. The party entered the front door and proceeded along the central tiled aisle which ran from the front of the restaurant toward the rear where the rest rooms and kitchen were located. This tile gave way to carpeting a number of feet before the rest rooms at the very rear. After passing the cigarette machine and cashier area, they took a table for four to their left in the carpeted dining area. This table was at an angle to the tiled aisle and near the edge of the *745 carpet. Mrs. Sperandeo took a chair with her back toward the aisle and the rest of the party took the other three seats.
After completing their meal, Mr. Sperandeo got up, proceeded on the carpet a little way, and then crossed the tiled aisle toward the cashier. Mr. and Mrs. Cantin arose and basically followed the path taken by Mr. Sperandeo along the carpet and then onto the tile. Mrs. Sperandeo, on the other hand, got up to her right and continued to turn to the right on the carpet and then out into the aisle. On her first or second step on the tile her foot slipped out from under her and she fell on her buttocks. She also extended her left arm to break the fall.
The rest of the party were at the cashier when the fall occurred, and they all rushed to Mrs. Sperandeo's aid. Their testimony was uniform that Mrs. Sperandeo's dress and hand were wet from water left by recent mopping. Mr. Cantin added that the water had what appeared to him to be soap bubbles in it. The three also agreed that they had seen an employee mop the floor about five minutes before the incident, but Mrs. Sperandeo testified that she did not see the mopping, evidently because her back was toward the aisle.
These witnesses also generally agreed that when they entered the restaurant there were two yellow "wet floor" cones visible. One was near the cigarette machine near the door, and the other was in the rear near the rest rooms. Mr. Sperandeo testified that the rear cone was as depicted in a photograph which showed it in fact on the carpeted portion of the floor near the rest rooms. The tiled floor was dry at the time they entered the restaurant. When the mopping was done later, neither of the cones was moved to the wet area in the central portion of the aisle where the party was sitting. Sandra Codella, the then manager, testified to the contrary that the cones had been placed on the mopped area.
Other evidence presented by plaintiffs showed that Mrs. Sperandeo subsequently underwent a laminectomy at the L-5 level, which resulted in a staph infection lasting several months. The prognosis for this back condition is that she will experience occasional pain for the rest of her life. She also underwent a surgical procedure in her shoulder. She has a whole body disability rating of 15-20% because of her back problems, and an additional 3-5% upper body rating because of her shoulder. The medical bills for these procedures came to about $50,000.00.
The trial judge found plaintiffs' witnesses credible as to the mopping and lack of properly placed warning cones, and held the defendants liable to plaintiffs. He awarded Mrs. Sperandeo all medicals, $16,000.00 in lost wages, and $180,000.00 in general damages. He awarded Mr. Sperandeo $25,000.00 for loss of consortium. Defendants now appeal.
Five grounds for reversal of the judgment are urged. The first concerns the trial judge's striking of defendants' jury request for failure to timely pay the costs. The remaining four assert manifest error in the judge's findings of fact, and abuse of his discretion in fixing damages.
The procedural history of the jury trial issue is as follows. This suit was filed on August 4, 1992, and defendants answered and requested a jury trial. On September 8, 1992, the trial judge signed an order providing that jury costs were to be paid "within seven days prior to trial." On the morning of trial on October 23, 1995, defendants paid these costs and presented the receipt to the court. Plaintiffs moved that the jury be stricken for failure to timely pay the jury costs, and after hearing argument the motion was granted. In his reasons for this judgment the trial court noted that La.Code Civ. Pro., Art. 1734.1 had been amended to mandate that jury costs must be paid 30 days prior to trial, rather than within 30 days of trial, as previously provided, and that failure to timely pay these costs resulted in waiver of the right to trial by jury.
Defendants perfected an emergency supervisory writ in this court. In denying the writ this court stated:
Act 148 of this past regular session of the La. Legislature amended L.C.C.P. art. 1734 to clarify that a jury bond must be filed at a time set by the district court, but "no later than 30 days prior to trial." *746 Since L.C.C.P. art. 1734, as amended, was not followed, jury trial is not available in this case.
Accordingly, this writ application is denied.
The matter thus proceeded as a bench trial. The defendants now again assert that it was error to strike their jury request.
We note initially that the effective date of the amended codal article was August 15, 1995. Trial of this case was set for October 23, 1995, and therefore under the amended article, the defendants could have paid the jury costs up until September 23, 1995, but failed to do so. If the amendment is applicable to this case, then clearly the defendants waived their right to a jury trial by failing to pay the costs timely.
In Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), the court set forth the proper analysis to be used in determining whether statutes are to be applied prospectively or retroactively. Article 6 of the Louisiana Civil Code provides:
In the absence of contrary legislation, substantive laws apply prospectively only. Procedural and interpretive laws apply prospectively and retroactively, unless there is a legislative expression to the contrary.
The court pointed out that the first inquiry under this article is simply whether the legislature expressed its intent. Only when no intent is expressed must a court engage in the further analysis of whether the enactment is substantive, procedural or interpretive. It went on to explain that generally the determinative date separating prospective from retroactive application is the date on which the cause of action accrues. If a right is substantive, it becomes a property right which may not constitutionally be divested by retroactive legislation without implicating due process concerns. If, instead, the new legislation relates only to how a substantive right is to be vindicated in the courts, then that right is deemed procedural and the new law may be given retroactive effect without impinging on any substantive rights which may have accrued to a party at the time the cause of action arose.
In the present matter, the actual issue is thus whether imposition on the defendants of the new time limit for paying the costs of a jury has deprived them of any substantive right which existed at the time the incident in question occurred. We conclude that it did not. Although the right to a trial by jury is fundamental, it is not absolute. Under the prior law, failure to timely pay the jury costs operated as a waiver of that right, and under the new law the result is the same. The only change made in the new law concerns when the costs have to be paid. As shown above, the defendants had some five weeks after the effective date of the new law in which to pay these costs. Their failure to do so and consequent waiver of the right to a jury was thus not a deprivation of a substantive right by retroactive application of a new law, but rather resulted from their failure to comply with a new procedural requirement. In this circumstance, we conclude that the amendment to La.Code Civ.Pro., Art. 1734.1 was procedural, that it thus was to be given retroactive effect, and that the decision of the trial court to do so and strike the jury demand was therefore proper, and we so hold.
Defendants next allege that the trier of fact fell into manifest error in finding negligent conduct on their part. In his reasons for judgment delivered from the bench, the trial judge stated that he found plaintiffs and their witnesses credible, but had reservations about defendants' only fact witness, the manager on duty the night of the incident. He further found that plaintiffs had established that the floor had been mopped five to ten minutes before the accident and that warning cones had not been set in place. Based on the lack of proper warning of the hazardous condition of the floor, he found defendants liable for plaintiffs' injuries.
While appellate courts are constitutionally mandated to review facts, the applicable standard of review is whether the facts found are manifestly erroneous or clearly wrong, Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216. In applying this standard the inquiry is not whether this court may have made different factual determinations had it *747 been the original trier of fact, but rather whether the facts found by the actual trier of fact are based on reasonable evaluations of credibility and reasonable inferences drawn from the evidence, Rosell v. ESCO, 549 So.2d 840 (La.1989).
In the present case, we find no such manifest error. Plaintiffs and their witnesses testified that the floor was dry when they entered and that one warning cone was near the cigarette machine at the very front of the entryway and the other was in the rear of the restaurant. Mr. Sperandeo stated that the cone in the rear was actually as depicted in a photograph which showed it in fact on the carpet near the rest rooms at the very back of the building. These witnesses also testified that when the mopping was done, neither of the cones was moved from the original locations onto the wet portion of the aisle where the accident occurred. Mr. Cantin further said that the floor was quite wet and appeared soapy and sudsy.
Under La.R.S. 9:2800.6, a merchant owes a duty of reasonable care to keep his premises free from hazardous conditions which might reasonably cause damages. To recover, an injured party must prove that the hazardous condition existed, that the merchant knew or should have known of it, and nonetheless failed to exercise reasonable care in the circumstances. In the present case there was ample evidence to show that the wet floor was hazardous and there is no question that the merchant knew of the condition. The ultimate factual question was thus whether reasonable care was taken to warn patrons of the danger. The restaurant had on hand the warning cones which boldly said "CAUTION-WET FLOOR." The trial court found that the cones were not placed where the danger was, and that this constituted a failure to use reasonable care to protect patrons from injury. We find nothing manifestly erroneous in these findings, and therefore may not set them aside.
Defendants' third assertion is that the trier of fact fell into manifest error in not finding Mrs. Sperandeo comparatively negligent in failing to notice that the floor had recently been mopped and in heeding the warning cones. This plaintiff testified that she had her back to the aisle and simply did not notice that the mopping was taking place. The trial judge apparently found this testimony credible and we see no error in that finding. As to the warning cones, as discussed above the trier of fact found that they had not been placed appropriately at the point of the hazard. It is difficult to understand how Mrs. Sperandeo could have been negligent in failing to see warnings which were not there. We therefore reject this argument as well.
The fourth issue relates to the general damage award of $180,000.00. Defendants do not assert that the disc injury was not related to the fall, and implicitly acknowledge that if the liability issue was properly decided against them, then they are liable for damages associated with that injury. They do dispute, however, the findings that the shoulder condition and subsequent surgery were related to the incident. They thus urge that the award be adjusted to delete that portion associated with these latter problems. Again, the issue is whether the trier of fact fell into manifest error in finding that the shoulder injury was related to the fall.
The treating physician, Dr. Joseph P. Licciardi, Jr., began seeing plaintiff on August 10, 1991, for complaints of back pain, and he admitted her to the hospital for examination. Although the doctor apparently did not note any complaints of shoulder pain at the time, he did have a notation of a September 5th visit which indicated that "she was still complaining of mainly her back, but she still had some complaints of pain in the left arm and shoulder." The shoulder problem was mentioned intermittently during the treatment and eventual surgery for the lumbar disc injury. That latter surgery, done on October 14, 1991, resulted in a lingering infection which did not resolve until January of 1992. It appears that as the back condition improved, the shoulder problem came to the fore. Conservative treatment and physical therapy over the course of months did not help, and in January of 1993, surgery was performed. The doctor testified that the cause of pain was bone spurs which were irritating the rotor cuff. It was his opinion *748 that while the spurs may have pre-dated the fall, it was more probable than not that if plaintiff had used her hand to break her fall, this would have pushed the spurs into the rotor cuff causing irritation. Plaintiff testified that she did use her hand to break her fall. There was no expert testimony presented by the defense to refute the opinion of the treating doctor.
Considering the above testimony, it is clear that reasonable credibility determinations and reasonable inferences from the evidence would support the factual finding that the shoulder problem was related to the accident. Again, because we find no manifest error in this factual finding, we may not set it aside. Given that the finding that the shoulder injury was causally related to the accident, we also must reject defendants' argument that the general damage award should be adjusted to eliminate that portion attributable to the shoulder problem, and we therefore affirm that award.
The final issue concerns the $25,000.00 award to Mr. Sperandeo for loss of consortium, which defendants' contend is excessive. The inquiry on appeal as to the amount of general damages is not what the reviewing court might have awarded had it heard the case originally, but rather whether the actual trier of fact abused his much discretion in fixing those damages, Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Further, because each case is different, the adequacy or inadequacy of an award depends on the particular facts and circumstances at issue, Id. A claim for loss of consortium encompasses seven general elements which include: 1) loss of love and affection; 2) loss of society and companionship; 3) impairment of sexual relations; 4) loss of performance of material services; 5) loss of financial support; 6) loss of aid and assistance; and 7) loss of fidelity. It is not necessary, however, to prove every element to establish a compensable claim, Seagers v. Pailet, 95-52 (La.App. 5 Cir. 5/10/95), 656 So.2d 700.
In the present case, the evidence showed that the staph infection which developed after Mrs. Sperandeo's surgery required careful attention when she returned home. For some two months, Mr. Sperandeo had daily to unpack gauze pads from the wound, clean it and then re-pack it. He also was apprehensive about this procedure because the doctor had told both him and his wife that the infection might enter the spinal cord itself if improperly tended to, and this condition could be crippling or even fatal. He also testified that he had to do the shopping, housecleaning, cooking and laundry for several months. Because his wife was no longer working, he had to get a second job, but still had to refinance the house because of financial hardship. The couple had no sexual relations for some time, and they suffered personal friction from time to time. Their social life included frequent bowling and dancing, but both activities were severely curtailed because of the accident. Considering all of these factors, we are unable to articulate any reasons why the award is so high as to constitute an abuse of the trier of fact's much discretion. We therefore affirm the award for loss of consortium.
For the foregoing reasons, the judgment of the district court is hereby affirmed.
AFFIRMED.